IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CORPORACIÓN DE RESIDENTES DE LA CALLE CARRIÓN COURT,<br><br>     Plaintiff<br><br>        v.<br><br>ROBERTO J. SÁNCHEZ-RAMOS, et al.,<br><br>     Defendants | CIVIL NO. 08-1889 (JP) |

**OPINION AND ORDER**

Before the Court are a motion to dismiss (No. 12) filed by Defendants Roberto Sánchez-Ramos ("Sánchez"), Kendys Pimentel-Soto ("Pimentel"), and Carlos González-Miranda ("González"), in their official capacities; Plaintiff Corporación de Residentes de la Calle Carrión Court's opposition thereto (No. 20); Defendants' reply brief (No. 24); and Plaintiff's sur-reply (No. 28). Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of its rights under the Fifth and Fourteenth Amendments to the United States Constitution. Specifically, Plaintiff alleges that: (1) Defendants effected the direct physical taking of a controlled access gate at the end of Plaintiff's street, (2) Defendants caused the *de facto* annulment of related governmental permits for said controlled access gate, and (3) Defendants refused to return and reinstall the gate, thereby hindering Plaintiff's right to lawfully protect its property. Defendants move to dismiss

CIVIL NO. 08-1889 (JP)           -2-

Plaintiff's complaint on various grounds, including, *inter alia*, Eleventh Amendment immunity.  For the reasons stated herein, Defendant's motion to dismiss (**No. 12**) is hereby **GRANTED IN PART AND DENIED IN PART**.

## I.    FACTUAL ALLEGATIONS

Plaintiff is a Puerto Rico non-profit corporation with approximately eighty-two members, all of whom are permanent residents of Carrión Court Street, Santurce Ward, San Juan, Puerto Rico. Plaintiff was organized and chartered in 1992 with the purpose of constructing a controlled access gate after an increase in larceny and violent crime on Carrión Court Street caused area residents to fear for their life, property, and personal security.  Plaintiff submitted an access control approval request to the San Juan Municipal Government in 1992.  A hearing was held on this request on March 11, 1993, where the increased crime on Carrión Court Street was discussed.  Plaintiff also sought the approval of the Department of Natural Resources (the "DNER"), the United States Postal Service, the Puerto Rico Electric Power Authority, the Department of Transportation and Public Works, the Puerto Rico Aqueducts and Sewer Authority, the Puerto Rico Fire Department, and the Puerto Rico Telephone Company.  All of the aforesaid agencies allegedly approved or endorsed Plaintiff's request for an access control system, subject to compliance with certain terms and conditions.

CIVIL NO. 08-1889 (JP)          -3-

On November 18, 1994, the San Juan Municipal Assembly issued Resolution No. 29, Series 1994-1995, authorizing the access controls requested by Plaintiff. After approval by the Puerto Rico Rules and Permits Administration ("ARPE") on October 25, 1995, Plaintiff began construction of the access control system, which cost approximately $36,000.00. Plaintiff alleges that the crime rate diminished appreciably after the access control system was constructed in October 2005.

On or around 2006-2007, a group called the Coalición de Playas Para Todos (the "Coalición") presented complaints before the DNER and the Puerto Rico Department of Justice ("PR-DOJ"), alleging that the access controls installed by Plaintiff were unlawful. In response, an administrative complaint was issued by DNER, No. 06-609-ZMT, dated October 9, 2006 (the "DNER Complaint"). The DNER Complaint alleged that Plaintiff had installed a fence and gate within the terrestrial maritime zone ("ZMT") without the necessary permit. On February 7, 2007, DNER filed a motion of dismissal without prejudice of the DNER Complaint against Plaintiff, stating that it had not been able to formally establish the boundary between private and public lands on the site in controversy. On April 18, 2007, DNER denied the Coalición's request to intervene and for reconsideration of the voluntary dismissal.

Nonetheless, on August 16, 2007, agents of Defendants Sánchez and Pimentel physically seized, removed and confiscated the

CIVIL NO. 08-1889 (JP)          -4-

controlled access device located on the northern side of Carrión Court Street.  On that same day, the PR-DOJ issued a press release stating that Defendant Sánchez had ordered the removal of the controlled access device as a result of an investigation by the PR-DOJ.  The PR-DOJ concluded that the controlled access device had been illegally installed because it lacked required permits issued by ARPE and the corresponding endorsement of the DNER.  Plaintiff alleges that the order for the removal of the controlled access device was issued without providing Plaintiff an opportunity to be heard.

By a letter dated September 25, 2007, Defendant Sánchez stated that the removal of the controlled access device resulted from a criminal investigation that was still ongoing, as of that date.  In the same letter, Sánchez stated that the determination that the gates had been illegally installed had already been made at the time of the issuance of the criminal subpoena to Annette Malavé, Plaintiff's former President, on August 17, 2007.  Plaintiff has requested that the controlled access device be re-installed, but Defendants have denied said request.

## II.  **LEGAL STANDARD FOR A MOTION TO DISMISS**

According to the Supreme Court, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007).  As such, in order to

CIVIL NO. 08-1889 (JP)            -5-

survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, not merely conceivable. Id. at 1974. The First Circuit has interpreted Twombly as sounding the death knell for the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), quoting Twombly, 127 S. Ct. at 1969. Still, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 997 (1st Cir. 1992).

### III. **ANALYSIS**

Defendants move the Court to dismiss the complaint on the following grounds: (1) Eleventh Amendment immunity, (2) the Younger abstention doctrine, (3) ripeness, (4) the existence of an adequate state procedure for seeking just compensation, (5) failure to state a claim under the Fifth and Fourteenth Amendments pursuant to Section 1983, and (6) failure to state a claim of personal involvement under Section 1983. The Court will now consider Defendants' arguments in turn.

CIVIL NO. 08-1889 (JP)            -6-

### A.    **Eleventh Amendment Immunity**

Defendants argue that the allegations against them should be dismissed on the basis of Eleventh Amendment immunity.  The Eleventh Amendment bars a suit brought in federal courts against states, unless the state being sued waives its immunity or consents to be sued.  U.S. Const. amend. XI.  Puerto Rico is considered a state for Eleventh Amendment purposes.  Metcalf & Eddy v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 939 (1st Cir. 1993).  Absent waiver, neither a state nor agencies acting under its control may be subject to suit in federal court.  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142 (1993).  Further, the enactment of Section 1983 did not serve to abrogate the states' Eleventh Amendment immunity.  See, e.g., Quern v. Jordan, 440 U.S. 332, 342 (1979).

Plaintiff brings its claims against Defendants Sánchez, Pimentel and González in their official capacities only.  At the time of the filing of the complaint, Defendant Sánchez was the Secretary of the PR-DOJ, and Defendant Pimentel was an Assistant District Attorney at the PR-DOJ and worked as a Special Aide to Defendant Sánchez. Defendant González was the Secretary of the Puerto Rico Department of Transportation and Public works, successor to the agency head at the time of the facts giving rise to the instant complaint. Accordingly, the suit against Defendants in their official capacity is tantamount to an action directly against the state.  See

CIVIL NO. 08-1889 (JP)        -7-

Acevedo-Orama v. Rodríguez-Rivera, 389 F. Supp. 2d 238, 245 (D.P.R. 2005). However, state officials acting in their official capacity are not protected from claims for injunctive relief by the immunity afforded by the Eleventh Amendment, since said immunity only shields said officials against claims seeking monetary relief. Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 123 (1st Cir. 2003) (citing Ex parte Young, 209 U.S. 123, 155-156 (1908)); see also Redondo-Borges v. United States HUD, 421 F.3d 1 (1st Cir. 2005) (holding that Eleventh Amendment immunity does not bar prospective injunctive relief against official capacity defendants).

In the case at bar, Plaintiff seeks injunctive and declaratory relief against Defendants in their official capacity, in addition to Plaintiff's damages claim against said Defendants. The Court holds that Defendants are protected by Eleventh Amendment immunity as to Plaintiff's damages claims, and the Court will enter a separate judgment dismissing said claims with prejudice. However, because Plaintiff seeks equitable relief in addition to monetary damages, the Court finds that Plaintiff's claims for injunctive and declaratory relief against Defendants in their official capacity are not barred by Eleventh Amendment immunity protection, and therefore will remain pending before the Court.

### B.  **Younger Abstention Doctrine**

Defendants move the Court to dismiss Plaintiff's complaint based on the Younger abstention doctrine, arguing that a state criminal

CIVIL NO. 08-1889 (JP)          -8-

proceeding was ongoing before the instant lawsuit was filed, and therefore this Court must abstain from exercising jurisdiction over Plaintiff's complaint.

Under the Younger abstention doctrine, it is well-established that, in the interest of comity and federalism, federal courts may not enjoin pending state court criminal proceedings except under exceedingly rare and extraordinary circumstances. Olson v. Fajardo-Vélez, 419 F. Supp. 2d 32, 36 (D.P.R. 2006) (citing Younger v. Harris, 401 U.S. 37 (1971)). When determining if abstention from enjoining an ongoing state criminal proceeding is appropriate, a district court must consider whether: (1) there are ongoing state proceedings; (2) the proceedings implicate important state interests; and (3) the proceedings afford plaintiff an adequate opportunity to present his federal claims. Brooks v. New Hampshire Supreme Court, 80 F.3d 633, 638 (1st Cir. 1996) (citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)).

As to the first element, Defendants argue that the PR-DOJ commenced a criminal investigation prior to the filing of the instant complaint. Specifically, Defendants point to the September 25, 2007 letter sent by Defendant Sánchez to Plaintiffs, which stated that the removal of the controlled access device resulted from a "still ongoing - on that date - criminal investigation." Compl. ¶ 55. Defendants argue that because Plaintiff acknowledged said criminal

CIVIL NO. 08-1889 (JP)            -9-

investigation in its complaint, Plaintiff stipulates that a prior state action was pending at the time of the filing of its complaint.

Plaintiff disagrees, arguing that the abstention doctrine does not apply because the criminal investigation does not constitute an ongoing state proceeding, as it is not judicial in nature. When analyzing a civil case within the Younger abstention doctrine framework, the United States Supreme Court refined the definition of "ongoing state proceedings" to proceedings that are "judicial in nature." Middlesex Ethics Comm., 457 U.S. at 432; see also New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 369 (1989) (stating that the United States Supreme Court has "never extended the [Younger abstention doctrine] to proceedings that are not 'judicial in nature'"). Plaintiff also argues that even if the criminal investigation is judicial in nature, it does not provide Plaintiff with an opportunity to raise its federal claims.

The factual record is devoid of a detailed description of the criminal investigation commenced by the PR-DOJ, although said investigation apparently stems from potential charges of illegal construction of the controlled access device. Although no criminal indictments had been issued at the time of the filing of the parties' briefs, it is unclear whether a hearing has been or will be held. Given the lack of information regarding the criminal investigation, and taking the facts in the light most favorable to Plaintiff, the Court finds at this juncture that the Younger abstention doctrine

CIVIL NO. 08-1889 (JP)        -10-

does not prevent the Court from exerting subject matter jurisdiction over Plaintiff's complaint.

### C. **Ripeness and Exhaustion of State Procedures for Compensation**

Defendants argue that the Court should dismiss Plaintiff's claims since a material taking of Plaintiff's property has not occurred, and therefore Plaintiff's complaint is not ripe for adjudication. Defendants further argue that even if the case meets the ripeness requirements, Plaintiff has failed to exhaust the state procedure for seeking just compensation.

It is well-established that a plaintiff is not required to exhaust administrative remedies prior to bringing a Section 1983 action. <u>Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores-Galarza</u>, 484 F.3d 1, 14 (1st Cir. 2007). However, the United States Supreme Court has adopted a set of ripeness requirements specifically applicable to Takings Clause actions. See <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S 172, 194-195 (1985). <u>Williamson County</u> provides, in pertinent part:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "reasonable, certain, and adequate provision for obtaining compensation" exist at the time of the taking.

CIVIL NO. 08-1889 (JP)            -11-

Id. at 194, citations omitted.  As such, a takings claim is generally considered unripe if the claimant comes directly to a federal court without first seeking reimbursement through state procedures. Id. at 194-195.

In order to prevail on his claims, a plaintiff alleging a takings violation must show: (1) that he received a final decision from the state on the use of his property, and (2) that he sought compensation through state procedures provided for doing so. Id. at 194.  Because Williamson County involved a regulatory taking, as compared to the physical taking alleged by Plaintiff in the case at bar, only the second prong of the aforesaid test - the so-called "just compensation" prong - applies here.  See García-Rubiera v. Flores-Galarza, 516 F. Supp. 2d 180, 189 (2007).

The United States Court of Appeals for the First Circuit has stated that the main inquiry regarding the just compensation prong of the Williamson County test is whether the state makes available a process that is "particularly aimed at providing compensation when government action effects a taking." Flores-Galarza, 484 F.3d at 16. If the state does not offer a such process for just compensation, then a plaintiff's claim is ripe for adjudication before a federal court.  The First Circuit noted that it does not consider a state takings claim or any general remedial cause of action under state law to be considered a particularly aimed process.  Id.

Considering the facts in the light most favorable to Plaintiff,

CIVIL NO. 08-1889 (JP)          -12-

as required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court finds that Plaintiff has alleged a physical taking of property without just compensation.  Specifically, Plaintiff has alleged that Defendants removed the controlled access device, which was installed by Plaintiff with the proper permitting to deter crime, without a hearing or the provision of just compensation to Plaintiff.

Although Defendants argue that Plaintiff should have first initiated a reverse condemnation proceeding in state court before filing the instant federal complaint, this is not the particularized process for relief envisioned by the First Circuit.  See Flores-Galarza, 484 F.3d at 16.  The Court agrees with Plaintiff that Defendants have not pinpointed any particularized state proceedings tailored to provide just compensation for Plaintiff's deprivation of property.  Therefore, given the remaining factual issue over the existence of a particularized state proceeding, Plaintiff need not show that he utilized such proceeding before filing the instant lawsuit in federal court.  As such, the Court denies Defendant's motion to dismiss on the grounds of ripeness and failure to initiate a state proceeding prior to filing a federal lawsuit.

    **D.**  **Plaintiff's Section 1983 Claims for Alleged Fifth and Fourteenth Amendment Violations**

Defendants claim that Plaintiff has failed to state a claim pursuant to Section 1983 for violations of its rights under the Fifth and Fourteenth Amendments of the United States Constitution.

CIVIL NO. 08-1889 (JP)          -13-

### 1.   **Plaintiff's Fifth Amendment Claims**

Defendants first argue that the Fifth Amendment applies only to actions of the federal government.  However, the First Circuit has clearly established that the Takings Clause of the Fifth Amendment, which provides that private property shall not be taken for public use without just compensation, applies to the states through the Fourteenth Amendment. Torromeo v. Town of Fremont, 438 F.3d 113, 114 (1st Cir. 2006); Hoffman v. Warwick, 909 F.2d 608, 615 (1st Cir. 1990).  At this early stage of the proceedings, the Court finds that Plaintiff has stated a Takings Clause violation against officers of  Puerto Rico, which is considered a state for Section 1983 purposes. Rivera-Lugaro v. Rullán, 500 F. Supp. 2d 28, 39 (D.P.R. 2007).  Therefore, the Court declines to dismiss Plaintiff's Fifth Amendment claims brought pursuant to Section 1983.

### 2.   **Plaintiff's Fourteenth Amendment Claims**

Defendants move to dismiss Plaintiff's substantive and procedural due process claims brought under the Fourteenth Amendment of the United States Constitution.  The Fourteenth Amendment provides that no state shall deprive any person of life, liberty or property without due process of law.  U.S. CONST. amend. XIV; see generally Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972).  The Fourteenth Amendment due process clause includes both a substantive

CIVIL NO. 08-1889 (JP)          -14-

due process right and a procedural due process right. Harrah Independent School Dist. v. Martin, 440 U.S. 194 (1979).

### a. Procedural Due Process

In order to succeed on a procedural due process claim, a plaintiff must demonstrate that he or she was deprived of a life, liberty, or property interest without the requisite minimum measure of procedural protection warranted under the circumstances. Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996). Here, Plaintiff has alleged that it was deprived of its property right to a controlled access device, despite having acquired the necessary permitting, without any form of hearing. It is uncontested that on August 16, 2007, Plaintiff's controlled access device was removed from the premises. It is also clear from the record that Plaintiff was not given notice of the removal, nor an opportunity to be heard on the issue before the controlled access device was removed. Therefore, the Court finds that Plaintiff has met its burden of pleading a Fourteenth Amendment procedural due process violation.

### b. Substantive Due Process

Substantive due process creates two categories of rights: (1) incorporation of most of the protections from the Bill of Rights, thus causing those limits on congressional activity to be applicable also to state legislatures, and (2) a more general protection against certain arbitrary, wrongful government actions. Jeneski v. City of

CIVIL NO. 08-1889 (JP)          -15-

Worcester, 476 F.3d 14, 17 (1st Cir. 2007). With regard to the first category of substantive due process rights, we have already addressed Plaintiff's particular claims based on the Fifth Amendment Takings Clause.

With regard to the second category of substantive due process rights, a general substantive due process claim may be made only when the state's action "shocks the conscience." Cruz-Ezaro v. Rivera-Montañez, 212 F.3d 617, 622 (1st Cir. 2000); see also County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998). The conscience-shocking standard provides relief where government officials have "abused [their] power, or employed it as an instrument of oppression." Id. at 846, quoting Collins v. City of Harker Heights, 503 U.S. 115, 126 (1992). Thus, "outside of a few narrow categories . . . this means conduct that is truly outrageous, uncivilized, and intolerable." Hasenfus v. LaJeunesse, 175 F.3d, 68, 72 (1st Cir. 1999), citing County of Sacramento, 523 U.S. at 847. The United States Supreme Court has held that, in defining conscience shocking, courts should consider that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process" while "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." County of Sacramento, 523 U.S. at 849; see also Daniels, 474 U.S. at 328 (holding that the Due Process Clause is not

CIVIL NO. 08-1889 (JP)            -16-

implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property).

The Court finds that Plaintiff has proffered evidentiary support to show that Defendants acted in a conscious-shocking manner by removing without notice a controlled access gate that allegedly had been installed years earlier with the necessary permitting in place. The Court must insist that Puerto Rico is led by a government of law and not of men - otherwise this community would be subject to the law of the dregs of society instead of the application of the law before a court or administrative body created to deal with the matter in question.  This conduct may prevail in countries where a state of anarchy reigns - that is not Puerto Rico.  Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's generalized substantive due process claims.

    **E.**   **Personal Involvement under Section 1983**

Defendants next argue that Plaintiff's claim should be dismissed because Plaintiff fails to plead sufficient facts to establish personal involvement on the part of Defendants.

In order to prevail on a Section 1983 claim, a plaintiff must demonstrate that the defendant (1) acted under color of state law and (2) deprived him of the identified federal right. See Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005) (quoting Romero-Barceló v. Hernández-Agosto, 75 F.3d at 32). A defendant incurs Section 1983 liability only if he was personally involved in the deprivation of

CIVIL NO. 08-1889 (JP)          -17-

rights asserted by a plaintiff; a defendant may be found liable only on the basis of his own acts or omissions. See id.; see also Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Rosado de Vélez v. Zayas, 328 F. Supp. 2d 202, 209 (D.P.R. 2004). A plaintiff may demonstrate personal involvement by showing an affirmative link between the deprivation and the defendant's conduct. See Cepero-Rivera, 414 F.3d at 129; see also Aponte-Matos v. Toledo-Dávila, 135 F.3d 182, 192 (1st Cir. 1998). "That affirmative link must amount to 'supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference.'" Aponte-Matos, 135 F.3d at 192, quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1998).

   A close reading of the complaint reveals that Plaintiff has pled personal involvement on behalf of Defendants Sánchez and Pimentel, who allegedly acted under the color of state law to deprive Plaintiff of a federally protected right to just compensation for the taking of its physical property. Specifically, Plaintiff alleges that on August 16, 2007, agents acting under the instructions of Defendants Sánchez and Pimentel physically seized, removed and confiscated the controlled access device installed by Plaintiff. Compl. ¶ 41. Plaintiff further alleges, *inter alia*, that Defendant Pimentel conducted the investigation on behalf of the PR-DOJ regarding the controlled access device at issue in this litigation, and also planned and coordinated the removal of said device. Compl. ¶ 47.

CIVIL NO. 08-1889 (JP)          -18-

Plaintiff alleges that Defendant Sánchez concluded that the controlled access devices had been illegally installed and that he ordered a criminal investigation regarding the same. Compl. ¶¶ 55, 57. Accordingly, the Court finds that Plaintiff has met its burden of demonstrating personal involvement under Section 1983 as to Defendants Sánchez and Pimentel.

However, as to Defendant González, the only allegation made by Plaintiff is that González received a copy of the March 18, 2008 letter sent by Plaintiff regarding the ARPE permitting for the controlled access device. Compl. ¶ 59. Plaintiff does not provide any further information regarding how Defendant González, acting on behalf of ARPE, violated Plaintiff's constitutional rights. Accordingly, the Court grants Defendants' motion to dismiss as to Defendant González, and will enter judgment dismissing with prejudice the complaint against Defendant González in his official capacity.

**F.  Defendants' Additional Arguments**

Finally, Defendants argue that Plaintiff's request for a preliminary injunction should be denied, and that Plaintiff's supplemental claims should be dismissed. However, a thorough reading of the complaint demonstrates that Plaintiff moved the Court for a permanent injunction, not a preliminary injunction, and that Plaintiff did not bring any claims under state law in its complaint. As such, Defendants' arguments are moot.

CIVIL NO. 08-1889 (JP)            -19-

## IV.  CONCLUSION

In conclusion, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss.  The Court will enter a separate judgment dismissing with prejudice Plaintiff's claims for monetary damages and Plaintiff's complaint against Defendant González. Plaintiff's claims for injunctive and declaratory relief against Defendants Pimentel and Sánchez remain before the Court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of February, 2009.


                                          s/Jaime Pieras, Jr.
                                         JAIME PIERAS, JR.
                                    U.S. SENIOR DISTRICT JUDGE