IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CORPORACIÓN DE RESIDENTES DE LA CALLE CARRIÓN COURT,<br><br>　　　　Plaintiff,<br><br>　　　　　v.<br><br>ROBERTO J. Sánchez Ramos, <u>et al</u>,<br><br>　　　　Defendants. | CIVIL NO. 08-1889 (JP) |

PLAINTIFF'S INITIAL SCHEDULING CONFERENCE MEMORANDUM

TO THE HONORABLE COURT:

COMES NOW, Plaintiff, CORPORACIÓN DE RESIDENTES DE LA CALLE CARRIÓN COURT ("Carrión Court" or "Plaintiff"), through the undersigned attorney, and respectfully presents its Initial Scheduling Conference Memorandum:

I.    PLAINTIFF'S FACTUAL AND LEGAL CONTENTIONS

A.    <u>Factual Contentions</u>

1. Plaintiff corporation was chartered in March, 1992, with the purpose of attending all matters pertaining to the well being of the residents of Carrión Court St., through those actions necessary, amongst others, to control the access of vehicles and the public to said street, including the acquisition of fixed goods and other assets, necessary to

protect the interests, welfare and security of the residents of Carrión Court St.

2. From, approximately, 1992, until 1994, Plaintiff, through its agents, officers and directors, commenced efforts aimed at obtaining necessary permits, approvals, endorsements and authorizations (hereinafter, all referred to as "Permits") for the installation, construction and operation of street access control structures and devices at the northern and southern ends of Carrión Court St. (hereinafter, "Access Control").

3. Plaintiff efforts to establish Access Control were the result of an increase in larceny and violent crime, in and about Carrión Court St., including armed assaults, killings and hijackings, which made area residents fear for their life, property, personal security and well-being.

4. Efforts by CARRIÓN COURT to obtain Access Control Permits included submittal to the San Juan Municipal Government, on or about 1992, of an Access Control approval request, pursuant to authority conferred to municipal governments by Commonwealth Law No. 21 of May 20, 1987, as amended, 23 L.P.R.A. § 64 (1999).

5. On or about March 11, 1993, the San Juan Municipal Government held public hearings concerning CARRIÓN COURT's Access Control request (hereinafter, "Public Hearings").

6.    During   the   Public   Hearings,   Commonwealth   Police Department agents stated that:  (a) a drug point was located on Carrión  Court  St.;  (b)  serious  crime  problems  at  Carrión  Court St. had increased during the last three or four years; (3) three security guards stationed at Carrión Court St. had been murdered during  attacks  to  deprive  them  of  their  firearms;  and,  (4)  on three  occasions  police  officers  had  been  shot  at  on  Carrión Court St. during interventions with criminal activities.

7.    Loiza  Police  Precinct  No.  366  records  indicate  that  a high   number   or   crimes,   including    robberies,   unlawful appropriations  and   stolen  vehicles  were  reported  in  or  about Carrión Court St. between January 1, 1994 and May 31, 1994.

8.    In  furtherance  of  the  Access  Control  request  submitted to  the  San  Juan  Municipal  Government,  CARRION  COURT  sought  the endorsement  or  approval  of  proposed  Access  Control  from,  amongst other  local  and  federal  agencies:  (a)  the  Department  of  Natural Resources  and  Environment  (hereinafter,  "DNRE");  (b)  the  United States  Postal  Service;  (c)  the  Puerto  Rico  Electric  Power Authority; (d) the Department of Transportation and Public Works (hereinafter,   "DTOP,   according   to   the   Spanish   language acronym"); (e)  the  Puerto  Rico  Aqueducts  and  Sewer  Authority; (f)  the  Puerto  Rico  Fire  Department;  and,  (g)  the  Puerto  Rico Telephone Company.

9. All of the above-mentioned agencies approved or endorsed, subject to compliance with certain terms and conditions, Plaintiff's Access Control Request.

10. Then DNRE agency Secretary, Mr. Pedro Gelabert, by letter dated March 25, 1993, addressed to the San Juan Municipal Government Planning and Budget office, stated that the Access Control request, which included access to the beach area, was viable subject to compliance with terms and conditions therein stated.

11. On August 25, 1994, the Municipality of San Juan's Access Control Unit Director, Ms. Lillian Cruz Fortier, and the Director of the Planning Office, Rafael Fernández Rodríguez, signed a document titled Report and Recommendations ("Informe y Recomendación"), summarizing findings of the Public Hearings.

12. Public Hearing findings included those related to criminal activity incidence, in or about Carrión Court St., described in hereinabove paragraphs 6 and 7.

13. On November 18, 1994, the San Juan Municipal Assembly issued Resolution No. 29, Series 1994-95, authorizing the Access Control request presented by CARRIÓN COURT.

14. On March 23, 1995, CARRIÓN COURT, through its agent, Architect Edward Underwood Ríos, filed a Construction Permit

4

Request before the Puerto Rico Rules and Permits Administration (hereinafter, "ARPE" according to the Spanish language acronym) requesting authorization to construct the Access Control approved by the Municipality of San Juan for Carrión Court St.

15. On March 28, 1995, ARPE informed Underwood Architects, that its Access Control Request had been approved and a Construction Permit would be issued upon compliance with certain terms and conditions.

16. On October 25, 1995, ARPE issued the Access Control Construction Permit and approved the corresponding Construction Drawings.

17. CARRIÓN COURT expended, approximately, $36,000.00 in Access Control approval, design and construction costs.

18. Approval, design and construction cost expenditures were made from funds provided by CARRION COURT members and received through donations and legislative grants.

19. Once construction of Access Control ended, on or about September-October 1995, criminal activity on Carrión Court St. diminished appreciably.

20. On or about the years 2006-07, a group identified as "Coalición de Playas para Todos" (hereinafter "Coalición"), presented grievances ("querellas") before the DNRE and the CDOJ, alleging that gates and fences installed, amongst other places, at Carrión Court St. were unlawful.

21.   The grievances before the DNRE resulted in issuance of Administrative Complaint ("Querella" in the Spanish language) No. 06-609-ZMT (hereinafter "DNRE Complaint"), dated October 9, 2006, by the DNRE against herein Plaintiff, through its then President, Ms. Annette Malavé.

22.   The DNRE Complaint alleged that CARRIÓN COURT had installed a fence and gate within tidelands ("terrestrial maritime zone") or ("ZMT", according to the Spanish language acronym) without the corresponding DNRE Concession, license or permit.

23.   On or about November 8, 2006, CARRIÓN COURT filed an appearance before the DNRE hearing examiner presiding over DNRE proceedings and requested time to retain legal counsel and respond to the DNRE Complaint.

24.   On or about the years 2006 and 2007, Coalición organized and was involved in public demonstrations and protests that resulted in the removal of gates and other structures in and around coastal areas in the Isla Verde sector of Carolina, Puerto Rico, and the Ocean Park and Condado sectors of Santurce Ward, Puerto Rico.

25.   On or about February 2, 2007, DNRE counsel in the DNRE Complaint filed a Motion of Dismissal without Prejudice, notified on February 5, 2007, to CARRION COURT.

26. As grounds for its Notice of Dismissal, DNRE stated that, although the DNRE Complaint was based on the allegedly unauthorized construction of structures within the ZMT, the DNRE had not been able to formally establish the boundary between private and public lands[2] of the site in controversy.

27. On or about February 9, 2007, Coalición appeared in DNRE Complaint proceedings with a Request to Intervene and Motion Opposing Dismissal without Prejudice.

28. On April 18, 2007, the DNRE denied a Request for Reconsideration filed by Coalición and, thus, confirmed a prior Resolution dismissing, as requested, the DNRE Complaint and denying the Request for Intervention.

29. On or about the first weeks of August, 2007, Defendants Sanchez Ramos, Pimentel Soto and all or some of John Does 1-7 planned the physical taking and confiscation of the northern components of the Access Control.

30. During the morning of August 16, 2007, Defendant John Does 1-4, employed by DTOP, acting under the instructions of Defendants Sánchez Ramos and Pimentel Soto, physically seized, removed and confiscated the fence and gate located on the northern side of Carrión Court St. (hereinafter, "Removed Access

---

[2] The action of establishing the boundary between public trust maritime resources and private property is known, in the Spanish language, as a "deslinde".

Control") that formed part of the Access Control authorized by the Municipality of San Juan on November 18, 1994.

31. On August 16, 2007, Defendant Pimentel Soto was present at Calle Carrión St. during the removal of the northern components of the Access Control; Defendant informed the press that the removal order was given by Defendant Sánchez Ramos.

32. In addition to Defendant Pimentel Soto and Defendants John Does 1-4, Defendants John Does 5-7, upon information and belief, associated with the Coalición, participated in the planning for the removal of Carrión Court St. Access Control northern side elements or components.

33. Upon information and belief, the Removed Access Control remains under the possession and control of John Does 1-4 and/or DTOP agents or officers.

34. On August 16, 2007, the Commonwealth Department of Justice issued a press release, informing that Defendant Sánchez Ramos had ordered removal of the gate at Carrión Court St.

35. According to the press release, the removal order was the result of an investigation by the Commonwealth Department of Justice.

36. Upon information and belief, the prior mentioned investigation, that resulted in Defendant Sánchez Ramos' final action, commenced on or about May 2007, under the direction and/or control of Defendant Pimentel Soto.

37.   Defendant Pimentel Soto conducted the investigation and planned and coordinated the removal of Access Control devices and structures at the northern end of Carrión Court St.

38.   According to the press release, the investigation that resulted in the gate removal order, concluded that the gate had been illegally installed because it lacked required permits issued by ARPE and the corresponding endorsements of the DNRE.

39.   On the same day of the Carrión Court St. gate and fence removal, Plaintiff, through its agents, informed Defendant Pimentel Soto that Carrion Court St. Access Control was installed after having obtained all required Permits.

40.   On August 17, 2007, Defendant Pimentel Soto issued a criminal subpoena addressed to former CARRIÓN COURT President, Annette Malavé, (hereinafter, "Criminal Subpoena"), requesting production of all documents related or pertaining to the installation of a gate at the end of Carrión Court including, without limitation, minutes and related public documents.

41.   On August 22, 2007, CARRIÓN COURT responded to the Criminal Subpoena and provided Defendant Pimentel Soto with, amongst other documents, the Municipality of San Juan, Carrión Court St. Access Control Permit and DNRE endorsement.

42.   By letter dated August 30, 2007, Plaintiff informed Defendant Sánchez Ramos that his order to remove the Carrión Court St. gate and fence had been issued, without providing

CARRIÓN COURT with a hearing and the opportunity to be heard, after concluding an investigation that did not count with all necessary documents, subsequently provided in response to the Criminal Subpoena.

43. Plaintiff requested, as part of the August 30, 2007, letter that the gate be returned and reinstalled in conditions identical to that existing when removed on August 16, 2007.

44. Plaintiff requested, as part of the August 30, 2007 letter, that a copy of the Administrative Order upon which Defendant Sánchez Ramos based his decision to summarily remove CARRIÓN COURT property be provided.

45. By letter dated September 25, 2007, Defendant Sánchez Ramos stated that the removal of the gate at the end of Carrión Court St. resulted from a  still ongoing — on that date - criminal investigation.  Copy of the requested Administrative Order was not provided.

46. Defendant Sánchez Ramos' letter of September 25, 2007, also states that the determination that the gates had been illegally installed had already been made at the time of issuance of the Criminal Subpoena.

47. Plaintiff has never been notified of the factual and legal basis for Defendant Sánchez Ramos' conclusion, reached on or before August 13, 2007, that Removed Access Control had been illegally installed.

48.   Plaintiff has never been notified of its right to appeal or seek review of Defendant Sánchez Ramos' decision ordering the summary, physical taking and confiscation of Carrion Court St. northern end Access Control and related Permits.

49.   By letter dated March 18, 2008, sent to Defendant Sánchez Ramos, with copies to Defendant Pimentel Soto, Plaintiff provided copies of the ARPE Access Control Construction Permit request, presented on March 23, 1995, and the ARPE approved Construction Drawings, dated October 25, 1995.

50.   The March 18, 2008 letter to Defendants stated that Plaintiff considered the removal of the Carrión Court St. Access Control measures unlawful and requested their immediate return and reinstallation.

51.   Defendants have refused to return and reinstall Removed Access Control.

52.   Upon information and belief, Defendant Sánchez Ramos has enacted, adopted and enforced an unwritten policy, custom and practice, unsupported by Commonwealth of Puerto Rico laws and regulations, of effecting takings, seizures or confiscations of private property and/or vested rights in coastal areas without previously determining if said properties or vested rights pertain to properties located within the ZMT.

53.  Upon information and belief, Defendant Sánchez Ramos has enacted, adopted and enforced a policy, custom and practice, unsupported by Commonwealth of Puerto Rico laws and regulations, of banning Access Control in coastal communities, without taking into consideration the actual impact upon beach goers, and without balancing said impact upon the rights of coastal community residents to secure life and property pursuant to existing Commonwealth of Puerto Rico laws, regulations and practices.

54.  Upon information and belief, Defendant Sánchez Ramos has enacted, adopted and enforced a policy, custom and practice, unsupported by Commonwealth of Puerto Rico laws and regulations, of expansively interpreting the landward extent of the ZMT in such a form and manner that results in the taking of adjacent property owners rights.

55.  Defendant Sánchez Ramos is the initial decision maker of the action that resulted in the unlawful removal of the Access Control devices or structures located at the northern end of Carrión Court St.

56.  Defendant Sánchez Ramos' final action has inflicted injury upon Plaintiff and its members as a result of the physical taking, seizure, confiscation and appropriation of their property, absent appropriate pre or post deprivation

proceedings, in violation their constitutional rights, making the instant action ripe for consideration by this Court.

57. Defendant Pimentel Soto's actions were not performed while acting as an advocate for the Commonwealth of Puerto Rico in proceedings intimately associated with the judicial phase of a criminal process and, on the contrary, were performed while acting in fulfillment of investigative and administrative functions.

58. Plaintiff reasonably fears that its members, will be imprisoned and/or subject to fines, liens, forfeitures or other penalties if they reinstate Removed Access Control devices or structures at the northern end of Carrión Court St. as previously authorized by the San Juan Municipal Government and endorsed, authorized or approved by State agencies.


**B.   <u>Legal Contentions</u>**

1. Defendants effected the direct physical taking of a controlled access gate at the northern end of Carrión Street, Santurce, Puerto Rico, which they have refused to return, thus causing the *de facto* annulment of related governmental permits for said controlled access gate, hindering Plaintiff's right to lawfully protect its property.

2.   Defendants' actions, official policy and course of conduct, under color or state law, have deprived Plaintiff of rights, privileges and immunities secured by the United States Constitution, in violation of 42 U.S.C. § 1983.

3.   Plaintiff has a property interest in the removed access control gate and related permits, as defined by Commonwealth of Puerto Rico law, and Defendants, acting under color of state law, deprived Plaintiff of that property interest without constitutionally adequate process.

4.   Defendants, while acting under color of state law, have physically taken, seized and confiscated Plaintiff's property without just compensation, thereby violating Plaintiff's constitutional rights under the Fifth and Fourteenth Amendments to the Constitution of the United States.

5.   As a direct and proximate result of Defendants' taking, seizing and confiscating Plaintiff's property, without just compensation Plaintiff has suffered and continue to suffer irreparable harm and damages including the loss of their constitutional rights.

6.   Defendants, while acting under color of state law, have physically taken, seized and confiscated Plaintiff's property without constitutionally adequate process, thereby violating Plaintiff's constitutional procedural due process

rights under the Fourteenth Amendment to the Constitution of the United States.

7.  As a direct and proximate result of Defendants' taking, seizing and confiscating Plaintiff' property, without due process of law, Plaintiff has suffered and will continue to suffer irreparable harm and damages including the loss of their constitutional rights.

8.  Defendants' actions under color of state law, of physically taking, seizing and confiscating Plaintiff's property without prior notice or constitutionally adequate process, involves a gross abuse of power and fundamentally unfair procedures, thus violating Plaintiff's substantive due process constitutional rights under the Fourteenth Amendment to the Constitution of the United States.

9.  Defendants, acting under color of state law or authority have deprived Plaintiff of their rights as protected under the Fifth and Fourteenth Amendments to the Constitution of the United States.

10.  Defendants have engaged in actions and omissions under color of law hostile to rights protected under the Fifth and Fourteenth Amendments to the Constitution of the United States.

## II.  PLAINTIFF'S PROPOSED UNCONTESTED FACTS

1.  Carrión Court is a duly registered not for profit corporation incorporated in the Commonwealth of Puerto Rico in 1992.

2.  Plaintiff's corporate purposes or objectives include conducting those actions necessary to close Carrión Court St. to motor vehicle and/or public traffic, as well as implementing all safety measures or other actions necessary for the protection of the interests, welfare and security of Carrión Court St. residents.

3.  On or about the year 1992, Plaintiff requested authorization from the Municipality of San Juan to establish Access Control gates and fences on the southern and northern ends of Carrión St., Santurce, Puerto Rico.

4.  A public hearing to consider Carrión Court's access control request for Carrión Court St. was held on March 11, 1993.

5.  A March 25, 1993, Department of Natural Resources letter, signed by Secretary Pedro A. Gelabert, addressed to San Juan Municipality Office of Planning and Budget Executive Director, Rafael Fernández, stated that the petition for access control on Carrión Court St., including access to the beach

area, was viable subject to compliance with four (4) conditions therein stated.

6.   The findings of the hearing held on March 11, 1993, appear in a document entitled Report and Recommendation, dated August 25, 1994, signed by the Municipality of San Juan's Director of the Access Control Unit, Attny. Lillian Cruz Fortier, and the Director of the Planning Office, Mr. Rafael Fernández Rodríguez.

7.   Ms. Cruz Fortier and Mr. Fernández Rodríguez recommended that Carrión Court be authorized to control access on Carrión Court St.

8.   On November 18, 1994, the San Juan Municipal Assembly issued Resolution No. 29, series 1994-1995, authorizing the access control requested by the Plaintiff.

9.   On October 25, 1994, the San Juan Municipal Assembly approved Resolution No. 29, authorizing the establishment of access control, as requested by Carrión Court, including the installation of an access control gate on the northern side of Carrión Court St.

10.   On November 18, 1994, San Juan Mayor, Hector Luis Acevedo, approved San Juan Municipal Assembly Resolution No. 29 of October 25, 1994.

11.   On March 23, 1995, licensed architect Edward Underwood Ríos, acting on behalf of Plaintiff, filed a permit request and

drawings before the Puerto Rico Rules and Permits Administration ("ARPE", according to the Spanish language acronym) for construction of Access Control on Carrión Court St. approved by the Municipality of San Juan.

12. On October 23, 1995, ARPE issued a Construction Permit for Access Control on Carrión Court St. approved by the Municipality of San Juan.

13. Access Control structures and devices approved by the Municipality of San Juan for Carrión Court St. were built and in operation until removal of the northern end fence and gate on August 16, 2007.

14. On October 9, 2006, the Puerto Rico Department of Natural Resources and Environment issued Complaint, <u>Department of Natural Resources and Environment vs. Carrión Court Assoc. of Residents and as its President Anette Malave</u>, Complaint No. 06-609-ZMT, alleging that Respondents ("Querellados") had constructed a fence or grating and a gate in tidelands ("zona maritime terrestre"), which are public domain tidelands, at the end of Carrión Court St. Ocean Park Sector of the Municipality of San Juan, without a corresponding DNR concession.

15. Motion for Voluntary Dismissal Without Prejudice, dated January 30, 2007, by DNR attorney Claribel Díaz Cortés, within <u>Department of Natural Resources and Environment v. Carrión Court Residents Association and as their President,</u>

<u>Annette Malavé</u>, Complaint No. 06-609-ZMT, before the Commonwealth of Puerto Rico Department of Natural Resources and Environment, stating that the setting of the boundary ("deslinde") with tidelands had not been performed.

16. Resolution upon Reconsideration, dated April 18, 2007, signed by DNR Secretary Javíer Vélez Arocho, in <u>Department of Natural Resources and Environment v. Carrión Court Residents Association and s their President, Annette Malavé</u>, Complaint No. 06-609-ZMT, before the Commonwealth of Puerto Rico Department of Natural Resources and Environment, reaffirming a denial of intervention by Mr. Nelson Pérez and "Coalición Playas Para Todos, Inc." and reaffirming a denial of reconsideration filed by DNR attorneys.  The Secretary ordered DNR attorneys to request inclusion of the matter in the hearings schedule, once ready to proceed with the case.

17. The DNR has not reopened <u>Department of Natural Resources and Environment v. Carrión Court Residents Association and as their President, Annette Malavé</u>, Complaint No. 06-609-ZMT, nor issued a final determination concerning the allegations of the Complaint.

18. On August 13, 2007 Defendant Sánchez Ramos informed Police Superintendent Pedro Toledo Dávila that, police assistance was requested since a determination had been made by the Justice Department that the access gates to the beach at

Carrión Court and Atlantic Place Streets were illegal and would be immediately removed.

19.    On August 14, 2007, Defendant Sánchez Ramos informed Dr. Carlos J. González Miranda that, police assistance was requested since a determination had been made by the Justice Department that the access gates to the beach at Carrión Court and Atlantic Place Streets were illegal and would be immediately removed.

20.    On August 16, 2007, agents of Defendants Pimentel Soto and Sánchez Ramos removed access control fence and/or gate installed on the northern end of Carrión Court St.

21.    On August 16, 2007, the Commonwealth Department of Justice issued a press release, informing that Defendant Sánchez Ramos had ordered removal of the gate at Carrión Court St.

22.    On August 17, 2007, Defendant Pimentel Soto issued a criminal subpoena addressed to former CARRIÓN COURT President, Annette Malavé, requesting production of all documents related or pertaining to the installation of a gate at the end of Carrión Court including, without limitation, minutes and related public documents.

23.    Plaintiff has requested that removed access control fence and/or gate be reinstalled.

24.    Plaintiff was not afforded a hearing, of any kind, either before or after August 16, 2007, concerning the removal

of access control fence and/or gate located at the northern end of Carrion Court St.

### III. PLAINTIFF'S WITNESSES AND SUMMARY OF NATURE OF EXPECTED TESTIMONY

**A.  <u>FACTUAL</u>**

1.   Mr. Ricardo Charaff, President of Carrión Court on or about the years 1992-1995, and who will testify about the conditions and circumstances that propelled the incorporation of Carrión Court; the activities conducted and process followed to establish Access Control on Carrión Court St.; the permits, endorsements and authorizations issued as a result of said activities or efforts, including, but not limited to approval by the Municipality of San Juan, Hector Luis Acevedo, Mayor, and endorsement by the Department of Natural Resources and Environment Secretary, Pedro A. Gelabert; and, the monies expended as  part of the approval and construction process.

2.   Mrs. Annette Malave, former President of Carrión Court, will testify about the removal of the Carrion St., northern side, access control gate on August 16, 2007; her subsequent receipt of a criminal subpoena on August 17, 2007; the response to the subpoena, as well as efforts for subsequent return and installation of the removed access control gate; and, the absence of any administrative or judicial proceedings prior

to or after access  gate removal before Commonwealth of Puerto Rico courts or agencies.

3.  Mrs. Lourdes Valdés, current President of Carrión Court, will testify about the removal of the Carrión St., northern side, access control gate, on August 16, 2007, and the absence of any administrative or judicial proceedings prior to or after access  gate removal before Commonwealth of Puerto Rico courts or agencies.

4.  Mr. Jerry L. Más Negrón, Director, on or about 2007, of the San Juan Municipality's Access Control Area, will testify about the documents in his office files concerning: the establishment of Access Control on Carrión Court St., including an access control gate on the northern side of Carrión St.; the approval  issued by the Municipality of San Juan for the establishment of Access Control on said street, including an access control gate on the northern side of Carrión St.; the endorsement to said controls, including an access control gate on the northern side of Carrión St., conferred by the Puerto Rico Department of Natural Resources and Environment, on March 25, 1993, through then Secretary Pedro Gelabert.

5.  Mr. Roberto Alsina Miranda, former Director of the Municipality of San Juan's Permits Office, will testify about a letter dated December 18, 2006, addressed by him to Dr. Pérez, of the "Coalición Playa para Todos", in which he expresses not

having been able to locate an endorsement, within Permits Office files, for "Calle Carrión Court Final". He will also testify about a communication addressed by him to attorney Rosemary Borges Capó, dated March 15, 2007, in which he clarifies aspects of the December 18, 2006 letter.

**B.   <u>EXPERT</u>**

None.

### IV.  PLAINTIFF'S DOCUMENTARY EVIDENCE

1.   Corporación Residentes de la Calle Carrion Court Certificate of Incorporation, dated March 20, 1992, describing the corporation's objectives and purposes.

2.   Letter dated March 25, 1993, signed by Pedro A. Gelabert, Secretary of the Department of Natural Resources and Environment, addressed to Mr. Rafael Fernández, Executive Director of the Municipality of San Juan Office of Planning and Budget, regarding Public Hearing to Consider Petition for Access Control on Carrión Court Street in  the Ocean Park Sector, Santurce, Puerto Rico.

3.   Municipality of San Juan, REPORT AND RECOMMENDATION, Corporation of Residents of Carrión Court Street, Re: Access Control (Law No. 21 of May 20, 1987, as amended); dated August 25, 1994, signed by Lillian Cruz Fortier, Director, Access Control Unit; and by Rafael Fernández Rodríguez, Director of Planning Office.

4.    P. of R. No. 28, Resolution Number 29, TO AUTHORIZE ACCESS CONTROL ON CARRIÓN COURT STREET, SANTURCE, Approved: 18-11-1994, Series 1994-95, signed by Manuel D. Herrero García, President of the Municipality of San Juan Municipal Assembly, and approved by Mayor Hector Luis Acevedo, on November 18, 1994.

5.    Municipality of San Juan, CERTIFICATION, Corporation of Residents of Carrión Court Street, Re: Access Control Law No. 21 of May 20, 1987, as amended, dated January 30, 1995.

6.    Commonwealth of Puerto Rico, Rules and Permits Administration, REQUEST FOR CONSTRUCTION PERMIT, Number 95-18-B-348, dated March 23, 1995; Certified by Edward Underwood Ríos, March 9, 1995 and, CONTRUCTION PERMIT, APPROVED, by ARPE Administrator, Eng. Cesar Barreto Bosques, on Oct. 23, 1995.

7.    Construction Drawings for:  Carrion Court Vehicular Access, at Ocean Park, San Juan, Puerto Rico; stamped by Edward Underwood Ríos, Licensed Architect; stamped RECEIVED, March 23, 1995, by ARPE, San Juan Regional Office; stamped APPROVED, October 23, 1995, by Rules and Permits Administration, San Juan Regional Office.

8.  Motion for Voluntary Dismissal Without Prejudice, dated January 30, 2007, filed by DNR attorney Claribel Díaz Cortés, in Department of Natural Resources and Environment v. Carrión Court Residents Association and as their President, Annette Malavé, Complaint No.  06-609-ZMT, before the

Commonwealth of Puerto Rico Department of Natural Resources and Environment.

9.   Resolution upon Reconsideration, dated April 18, 2007, signed by DNR Secretary Javíer Vélez Arocho, in <u>Department of Natural Resources and Environment v. Carrión Court Residents Association and s their President, Annette Malavé</u>, Complaint No. 06-609-ZMT, before the Commonwealth of Puerto Rico Department of Natural Resources and Environment.

10.  Letter dated August 13, 2007, signed by Defendant Sánchez Ramos, addressed to Police Superintendent Pedro Toledo Dávila.

11.  Letter dated August 14, 2007, signed by Defendant Sánchez Ramos, addressed to Dr. Carlos J. González Miranda.

12.  Press Release, Secretary of Justice Orders the Removal of Gates that Prevent Free Access to Beach in Ocean Park, August 16, 2007.

13.  Subpoena dated August 17, 2007, signed by Kendys Pimentel Soto, addressed to Association of Carrión Court Street Residents President, Ms. Annette Malavé.

14.  Letter dated August 22, 2007, addressed to Defendant Sánchez Ramos, with copy to Defendant Pimentel Soto, with attached list of documents provided on that day by Plaintiff in response to subpoena.

15.    Letter dated March 18, 2008, addressed to Defendant Sánchez Ramos, with copy to Defendant Pimentel Soto, providing copy of ARPE construction permit request, dated March 23, 1995, and construction drawings with ARPE approval stamp, dated October 25, 1995.

16.    All documents provided by Plaintiff to Defendants Sánchez Ramos and Pimentel Soto in response to the subpoena.

17.    Photos provided by Defendants depicting the removal of Carrión Court St., northern side, access control gate and/or fence, and depicting the presence of Defendant Pimentel Soto.

18.    Telenoticias Video, appearing on You Tube, covering activities at Carrión Court St., on August 16, 2007.

## V.    PROPOSED DISCOVERY SCHEDULE

Depending on the outcome of whatever agreement may be reached between Plaintiff and Defendants, either before or during the Initial Scheduling Conferences, as to Uncontested Facts of this case, Plaintiff would preliminarily, and contingent upon the possible filing of a Motion for Summary Judgment:

1.    Address Written Interrogatories to Defendants

2.    Subject to responses to Written Interrogatories, Plaintiff preliminarily proposes to Depose:

a.    Former ARPE Administrator Luis A. Vélez Roche.

    b.   Former DNRE Permits Director Ms. Anita Barea Rechani.

    c.   Former DNRE Secretary Javier Vélez Arocho.

    d.   Former Municipality of San Juan Permits Office Director Roberto Alsina

## VI.  PLAINTIFF'S INITIAL DISCLOSURES

1. Plaintiff made initial disclosures to Defendant on February 27, 2009

2. Plaintiff made subsequent disclosures on March 10, 2008.

**WHEREFORE,** Plaintiff respectfully notifies its Initial Scheduling Conference Memorandum in the captioned matter.

**CERTIFICATE OF SERVICE:** On this same day, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send notification of said filing to attorneys of record: José Enrico Valenzuela-Alvarado and Alex J. Vázquez-Saldaña.

In San Juan, Puerto Rico, this 10th day of March, 2008.

**Respectfully submitted by,**


                           ***/s/ Patricio Martinez-Lorenzo***
                              USDC-PR NO. 120903
                              Martínez-Lorenzo Law Offices
                              Attorneys for Plaintiff
                              Union Plaza, Suite 1200
                              416 Ponce de León Ave.
                              Hato Rey, Puerto Rico 00918
                              Tel.: 787-756-5005
                              Fax: 787-641-5007
                              pmartlor@pmllawpr.com