**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CORPORACIÓN DE RESIDENTES DE LA CALLE CARRIÓN COURT, A Commonwealth of Puerto Rico non-profit corporation, | |
| Plaintiff, | Case No.08-1889(JP) |
| vs. | |
| ROBERTO J. SÁNCHEZ RAMOS, in his official capacity as Secretary of the Commonwealth of Puerto Rico Department of Justice; KENDYS PIMENTEL SOTO, in her official capacity as Assistant District Attorney and Special Aide to the Secretary of Justice; CARLOS J. GONZÁLEZ MIRANDA, in his official capacity as Secretary of the Commonwealth of Puerto Rico, Department of Transportation and Public Works; JULIO MORALES DÍAZ, HECTOR GONZÁLEZ and, JOHN DOES 5-7, | COMPLAINT FOR DECLARATORY JUDGEMENT, INJUNCTIVE RELIEF AND DAMAGES |
| Defendants. | |

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**TO THE HONORABLE COURT:**

**COMES NOW**, Plaintiff CORPORACIÓN DE RESIDENTES DE CALLE CARRIÓN COURT, INC. ("CARRIÓN COURT"), thru the undersigned attorney, and respectfully states and prays as follows:

1

**I.**

**NATURE OF THE CASE**

1.    This is a civil rights action for declaratory and injunctive relief, damages and other relief arising under 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. Section 2201, stemming from Defendants' violations of Plaintiff' rights guaranteed by the Constitutions and laws of the United States and the Commonwealth of Puerto Rico.

2.    The case arises from the direct physical taking, seizure and appropriation by Defendants, on August 16, 2007, acting under color of state law, policy or custom, of a fence and gate, installed at the northern end of Carrión Court St., Santurce Ward, San Juan, Puerto Rico, as well as the de facto annulment and voidance of related governmental permits, endorsements and authorizations, all forming part of street access control measures installed by Plaintiff in 1995, at both ends of Carrion Court St., after having obtained all required Municipal and Commonwealth governmental permits and authorizations.   The case also arises from the subsequent refusal be Defendants to return and reinstall removed property and, in the case of Defendants SÁNCHEZ RAMOS and PIMENTEL SOTO, their hindering Plaintiff' right to lawfully protect their life and property, and threatening CARRIÓN COURT members with criminal prosecution, in relation to the prior lawful

installation of confiscated access control devices or structures.

## II.
### JURISDICTION AND VENUE

3.    Jurisdiction is based on 28 U.S.C §§ 1331 and 1343(a)(3) and arises under the Fifth and Fourteenth Amendments to the Constitution of the United States. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.    Injunctive relief is authorized under Rule 65 of the Federal Rules of Civil Procedure.

4.    Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b), as Defendants reside within the territorial limits of the District of Puerto Rico and at all times mentioned herein the events took place within this district.

## III.
### PARTIES

A.    <u>Plaintiff</u>

5.    Plaintiff CARRIÓN COURT is a Commonwealth of Puerto Rico non-profit corporation, headquartered in San Juan, Puerto Rico with, eighty-two (82) members, approximately all of which are permanent residents of Carrion Court St., Santurce Ward, San Juan, Puerto Rico (hereinafter, "Carrion Court St.").

6.    CARRIÓN COURT was organized and chartered in March, 1992, with the purpose of attending all matters pertaining to the well being of the residents of Carrión Court St., through those actions necessary to control the access of vehicles and the public to said street and through those other actions, including the acquisition of fixed goods and other assets, necessary to protect the interests, welfare and security of the residents of Carrión Court St.

B.    <u>Defendants</u>

7.    Defendant ROBERTO SÁNCHEZ RAMOS (hereinafter, "SÁNCHEZ RAMOS") is the Secretary of the Commonwealth of Puerto Rico Department of Justice and is sued in his official capacity.

8.    Defendant KENDYS PIMENTEL SOTO (hereinafter, "PIMENTEL SOTO") holds a position as Assistant District Attorney 1 at the CDOJ, works as a Special Aide to Defendant SÁNCHEZ RAMOS and is sued in her official capacity.

9.    Defendant CARLOS J. GONZÁLEZ MIRANDA (hereinafter, "GONZÁLEZ MIRANDA" is the Secretary of the Commonwealth of Puerto Rico Department of Transportation and Public Works, successor to the agency head at the time of the facts that give rise to the instant civil action and is sued in his official capacity.

10.   Upon information and belief, JULIO MORALES DÍAZ (hereinafter, "MORALES DIAZ") was at all times relevant and at

4

the present, occupied the position of Assistant Regional Director, San Juan Region, Puerto Rico Department of Transportation and Public Works, and is sued in his official capacity. Upon information and belief, he a career employee of the Department of Transportation and Public Works.

11. Upon information and belief, HECTOR GONZÁLEZ (hereinafter, "GONZALEZ") at all times relevant and at the present, occupied the position of Supervisor, San Juan Region, Department of Transportation and Public Works, San Juan Regional Shops & Warehouse, and is sued in his official capacity. Upon information and belief, he a career employee of the Department of Transportation and Public Works.

12. Plaintiff, upon information and belief, alleges that each of the Defendants sued herein, including those named herein as John Does 5 through 7, are the agents, servants, employees, licensees, guarantees, indemnitors, invitees, or assignees of each other, and in doing the things herein alleged acted within the course and scope of such agency, employment, license, guaranty, indemnity, invitation, assignment and/or relationship and with the full knowledge, consent, and approval of remaining Defendants.

## IV.
## FACTUAL BACKGROUND AND COMMON ALEGATATIONS

13.  In, approximately, 1992, CARRIÓN COURT, through its agents, officers and directors, commenced efforts aimed at obtaining the necessary permits, approvals, endorsements and authorizations (hereinafter, all referred to as "Permits") for the installation, construction and operation of street access control structures and devices at the northern and southern ends of Carrión Court St. (hereinafter, "Access Controls").

14.  CARRIÓN COURT efforts to establish Access Controls were the result of an increase in larceny and violent crime, in and about Carrión Court St., including armed assaults, killings and hijackings, which made area residents fear for their life, property, personal security and well-being.

15.  Efforts by CARRIÓN COURT to obtain Access Controls Permits included submittal to the San Juan Municipal Government, on or about 1992, of an Access Controls approval request, pursuant to authority conferred to municipal governments by Commonwealth Law No. 21 of May 20, 1987, as amended, 23 L.P.R.A. § 64 (1999).

16.  On or about March 11, 1993, the San Juan Municipal Government held public hearings concerning CARRIÓN COURT's Access Controls request (hereinafter, "Public Hearings").

17.  During the Public Hearings, Commonwealth Police Department agents stated that: (a) a drug point was located on

6

Carrión Court St.; (b) serious crime problems at Carrión Court St. had increased during the last three or four years; (3) three security guards stationed at Carrión Court St. had been murdered during attacks to deprive them of their firearms; and, (4) on three occasions police officers had been shot at on Carrión Court St. during interventions with criminal activities.

18. Loiza Police Precinct No. 366 records indicate that 7 robberies, 10 unlawful appropriations and 5 stolen vehicles were reported in or about Carrión Court St. between January 1, 1994 and May 31, 1994.

19. In a letter dated June 7, 1994, the Loiza Police Precinct Commander stated that the number of crimes committed between January 1, 1994 and May 31, 1994, in or about Carrión Court St. was high, given the fact that the street is small and has no exit.

20. In furtherance of the Access Controls request submitted to the San Juan Municipal Government, CARRION COURT sought the endorsement or approval of proposed Access Controls from, amongst other local and federal agencies: (a) the Department of Natural Resources and Environment (hereinafter, "DNRE"); (b) the United States Postal Service; (c) the Puerto Rico Electric Power Authority; (d) the Department of Transportation and Public Works (hereinafter, "DTOP, according to the Spanish language acronym"); (e) the Puerto Rico Aqueducts

and Sewer Authority; (f) the Puerto Rico Fire Department; and, (g) the Puerto Rico Telephone Company.

21. All of the above-mentioned agencies approved or endorsed, subject to compliance with certain terms and conditions, the CARRION COURT Access Controls Request.

22. In the case of the DNRE, then agency Secretary, Mr. Pedro Gelabert, by letter dated March 25, 1993, addressed to the San Juan Municipal Government Planning and Budget office, stated that the Access Controls request, which included access to the beach area, was viable subject to compliance with terms and conditions therein stated.

23. On August 25, 1994, the Municipality of San Juan's Access Controls Unit Director, Ms. Lillian Cruz Fortier, and the Director of the Planning Office, Rafael Fernández Rodríguez, signed a document titled Report and Recommendations ("Informe y Recomendación"), summarizing findings of the Public Hearings.

24. Public Hearing findings included those related to criminal activity incidence, in or about Carrión Court St., described in hereinabove paragraphs 16 thru 18.

25. On November 18, 1994, the San Juan Municipal Assembly, Hon. Hector Luis Acevedo, Mayor, issued Resolution No. 29 ,

Series 1994-95, authorizing the Access Controls requested by CARRIÓN COURT.

26. On March 23, 1995, CARRIÓN COURT, through agents, filed a Construction Permit Request before the Puerto Rico Rules and Permits Administration (hereinafter, "ARPE" according to the Spanish language acronym) requesting authorization to construct Access Controls approved by the Municipality of San Juan for Carrión Court St.

27. On October 25, 1995, ARPE approved the Construction Drawings submitted for the completed Access Controls installed on the northern and southern ends of Carrión Court St.

28. CARRIÓN COURT expended, approximately, $36,000.00 in Access Controls construction costs.

29. Construction cost expenditures were made from funds provided by CARRION COURT members and received through donations and legislative grants.

30. Once construction of Access Controls ended, on or about September-October 2005, criminal activity on Carrión Court St. diminished appreciably.

31. Upon information and belief, on or about the years 2006-07, a group identified as "Coalición de Playas para Todos" (hereinafter "Coalición"), presented complaints before the DNRE and the CDOJ, alleging that Access Controls installed at Carrión Court St. were unlawful.

32.  The Complaint before the DNRE resulted in issuance of Administrative Complaint ("Querella" in the Spanish language) No. 06-609-ZMT (hereinafter "DNRE Complaint"), dated October 9, 2006, by the DNRE against herein Plaintiff CARRIÓN COURT.

33.  The DNRE Complaint alleged that CARRIÓN COURT had installed a fence and gate within the terrestrial maritime zone or ("ZMT", according to the Spanish language acronym) without the corresponding DNRE Concession, license or permit.

34.  On or about November 8, 2006, CARRIÓN COURT filed an appearance before the DNRE hearing examiner presiding over DNRE proceedings and requested time to retain legal counsel and respond to the DNRE Complaint.

35.  On or about the years 2006 and 2007, Coalición organized and was involved in public demonstrations and protests that, upon information and belief, resulted in the removal of gates and other structures in and around coastal areas in the Isla Verde sector of Carolina, Puerto Rico, and the Ocean Park and Condado sectors of Santurce Ward, Puerto Rico.

36.  On or about February 2, 2007, DNRE counsel in the DNRE Complaint filed a Motion of Dismissal without Prejudice, notified on February 5, 2007, to CARRION COURT.

37.  On or about February 7, 2007, CARRIÓN COURT appeared represented by counsel in DNRE proceedings.

38. As grounds for its Notice of Dismissal, DNRE stated that, although the DNRE Complaint was based on the allegedly unauthorized construction of structures within the ZMT, the DNRE had not been able to formally establish the boundary between private and public lands[2] of the site in controversy.

39. On or about February 9, 2007, Coalición appeared in DNRE Complaint proceedings with a Request to Intervene and Motion Opposing Dismissal without Prejudice.

40. On April 18, 2007, the DNRE denied a Request for Reconsideration filed by Coalición and, thus, confirmed a prior Resolution dismissing, as requested, the DNRE Complaint and denying the Request for Intervention.

41. Upon information and belief, on or about the first weeks of August, 2007, Defendants PIMENTEL SOTO, MORALES DIAZ, GONZALEZ and JOHN DOES 5-7 planned the physical taking and confiscation of the northern components of the Access Controls.

42. Upon information and belief, during the morning of August 16, 2007, Defendant MORALES DIAZ, acting under the instructions of Defendants SÁNCHEZ RAMOS and PIMENTEL SOTO, physically seized, removed and confiscated, or authorized, instructed and supervised others acting under his direction, to physically seize, remove and confiscate, the fence and gate

---

[2] The action of establishing the boundary between public trust maritime resources and private property is known, in the Spanish language, as a "deslinde".

located on the northern side of Carrión Court St. (hereinafter, "Removed Access Controls") that formed part of the Access Controls authorized by the Municipality of San Juan on November 18, 1994.

43. In addition to Defendant PIMENTEL SOTO and Defendants MORALES DIAZ and GONZALEZ, Defendant JOHN DOES 5-7, upon information and belief, associated with the Coalición, participated in the planning for the removal of Carrión Court St. Access Controls northern side elements or components.

44. Upon information and belief, Removed Access Controls were placed and remain under the possession and/or control of MORALES DIAZ and/or GONZALEZ and/or DTOP agents or officers.

45. On August 16, 2007, the Commonwealth Department of Justice issued a press release, copy of which is attached as **Exhibit 1**, informing that Defendant SÁNCHEZ RAMOS had ordered removal of the gate at Carrión Court St.

46. According to the press release, the removal order was the result of an investigation by the Commonwealth Department of Justice.

47. Upon information and belief, the prior mentioned investigation, that resulted in Defendant SÁNCHEZ RAMOS' final action, commenced on or about May 2007, under the direction and/or control of Defendant PIMENTEL SOTO.

48.    Upon information and belief, Defendant PIMENTEL SOTO conducted the investigation and planned and coordinated the removal of Access Control devices and structures at the northern end of Carrión Court St.

49.    According to the press release, the investigation that resulted in the gate removal order, concluded that the gate had been illegally installed because it lacked required permits issued by ARPE and the corresponding endorsements of the DNRE.

50.    On the same day of the Carrión Court St. gate and fence removal, CARRIÓN COURT informed Defendant PIMENTEL SOTO that Carrion Court St. Access Controls were installed after having obtained all required Permits.

51.    On August 17, 2007, Defendant PIMENTEL SOTO issued a criminal subpoena addressed to former CARRIÓN COURT President, Annette Malavé, a copy of which is attached as **Exhibit 2** (hereinafter, "Criminal Subpoena"), requesting production of all documents related or pertaining to the installation of a gate at the end of Carrión Court including, without limitation, minutes and related public documents.

52.    On August 22, 2007, CARRIÓN COURT responded to the Criminal Subpoena and provided Defendant PIMENTEL SOTO with, amongst other documents, the Municipality of San Juan, Carrión Court St. Access Controls Permit and DNRE endorsement.

13

53. By letter dated August 30, 2007, CARRIÓN COURT informed Defendant SÁNCHEZ RAMOS that his order to remove the Carrión Court St. gate and fence had been issued, without providing CARRIÓN COURT with a hearing and the opportunity to be heard, after concluding an investigation that did not count with all necessary documents, subsequently provided in response to the Criminal Subpoena.

54. CARRIÓN COURT requested, as part of the August 30, 2007 letter, that the gate be returned and reinstalled in conditions identical to that existing when removed on August 16, 2007.

55. CARRIÓN COURT requested, as part of the August 30, 2007 letter, that a copy of the Administrative Order upon which Defendant SÁNCHEZ RAMOS based his decision to summarily remove CARRIÓN COURT property be provided.

56. By letter dated September 25, 2007, a copy of which is attached as **Exhibit 3**, Defendant SÁNCHEZ RAMOS stated that the removal of the gate at the end of Carrión Court St. resulted from a still ongoing — on that date - criminal investigation. Copy of the requested Administrative Order was not provided.

57. Defendant SÁNCHEZ RAMOS' letter of September 25, 2007, also states that the determination that the gates had been illegally installed had already been made at the time of issuance of the Criminal Subpoena.

14

58. PLAINTIFF has never been notified of the factual and legal basis for Defendant SÁNCHEZ RAMOS' conclusion, reached on or before August 16, 2007, that Removed Access Controls had been illegally installed.

59. Plaintiff has never been notified of its right to appeal or seek review of Defendant SANCHEZ RAMOS' determination ordering the summary physical taking and confiscation of REMOVED ACCESS CONTROLS.

60. By letter dated March 18, 2008, sent to Defendant SÁNCHEZ RAMOS, with copies to Defendants GONZÁLEZ MIRANDA and PIMENTEL SOTO, CARRIÓN COURT provided copies of the ARPE Access Control Construction Permit request, presented on March 23, 1995, and the ARPE approved Construction Drawings, dated March 23, 1995.

61. The March 18, 2008 letter to Defendants stated that CORPORACIÓN CARRIÓN COURT considered the removal of the Carrión Court St. Access Control measures as unlawful and requested their immediate return and reinstallation.

62. Defendants have refused to return and reinstall Removed Access Controls.

63. Upon information and belief, Defendant SÁNCHEZ RAMOS has enacted, adopted and enforced an unwritten policy, custom and practice, unsupported by Commonwealth of Puerto Rico laws and regulations, of effecting takings, seizures or confiscations

of private property and/or vested rights in coastal areas
without previously determining if said properties or vested
rights pertain to properties located within the ZMT.

64. Upon information and belief, Defendant SÁNCHEZ RAMOS
has enacted, adopted and enforced a policy, custom and practice,
unsupported by Commonwealth of Puerto Rico laws and regulations,
of banning Access Controls in coastal communities, without
taking into consideration the actual impact upon beach goers,
and without balancing said impact upon the rights of coastal
community residents to secure life and property pursuant to
existing Commonwealth of Puerto Rico laws, regulations and
practices.

65. Upon information and belief, Defendant SÁNCHEZ RAMOS
has enacted, adopted and enforced a policy, custom and practice,
unsupported by Commonwealth of Puerto Rico laws and regulations,
of expansively interpreting the landward extent of the ZMT in
such a  form and manner that results in the taking of adjacent
property owners rights.

66. Defendant SÁNCHEZ RAMOS' is the initial decision maker
of the action that resulted in the unlawful removal of the
Access Control devices or structures located at the northern end
of Carrión Court St.

67. Defendant SÁNCHEZ RAMOS' final action has inflicted
injury upon Plaintiff and its members as a result of the

physical taking, seizure, confiscation and appropriation of their property, absent appropriate pre or post deprivation proceedings, in violation their constitutional rights, making the instant action ripe for consideration by this Court.

68. Defendant PIMENTEL SOTO's actions were not performed while acting as an advocate for the Commonwealth of Puerto Rico in proceedings intimately associated with the judicial phase of a criminal process and, on the contrary, were performed while acting in fulfillment of investigative and administrative functions.

69. Plaintiff CARRIÓN COURT reasonably fears that its members, will be imprisoned and/or subject to fines, liens, forfeitures or other penalties if they reinstate Removed Access Control devices or structures at the northern end of Carrión Court St. as previously authorized by the San Juan Municipal Government and endorsed, authorized or approved by State agencies.

70. Plaintiff has exhausted any and all remedies afforded by Commonwealth or local law to obtain relief from the removal, physical taking, seizure and confiscation of Access Control devices and structures at the northern end of Carrión Court St.; any further demand or attempted recourse would be futile.

**COUNT I:**
**DEFENDANTS, UNDER COLOR OF LAW, HAVE DEPRIVED PLAINTIFF OF ITS CONSTITUTIONAL RIGHTS**

71.  Plaintiff hereby incorporates paragraphs 1 through 68 as if set forth fully herein, and realleges each paragraph by this reference.

72.  Defendants' actions, official policy and course of conduct, under color or state law, have deprived Plaintiff of rights, privileges and immunities secured by the United States Constitution, in violation of 42 U.S.C. § 1983 and as further alleged in this Complaint at Counts II, III and IV.

73.  Plaintiff has a property interest in Removed Access Controls and Permits, as defined by Commonwealth of Puerto Rico law, and Defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process.

**COUNT II:**
**DEFENDANTS, UNDER COLOR OF LAW, HAVE DEPRIVED PLAINTIFF OF PROPERTY WITHOUT JUST COMPENSATION IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUION OF THE UNITED STATES**

74.  Plaintiff hereby incorporates paragraphs 1 through 68 as if set forth fully herein, and realleges each paragraph by this reference.

75.  Defendants, while acting under color of state law, have physically taken, seized and confiscated Plaintiff' property without just compensation, thereby violating Plaintiff'

18

constitutional rights under the Fifth and Fourteenth Amendments to the Constitution of the United States.

76. As a direct and proximate result of Defendants' taking, seizing and confiscating Plaintiff' property, without just compensation Plaintiff has suffered and continue to suffer irreparable harm and damages including the loss of their constitutional rights.

**COUNT III:**
**DEFENDANTS, UNDER COLOR OF LAW, HAVE DEPRIVED PLAINTIFF OF**
**PROPERTY IN VIOLATION OF THEIR PROCEDURAL DUE PROCESS**
**RIGHTS UNDER THE CONSTITUION OF THE UNITED STATES**

77. Plaintiff hereby incorporates paragraphs 1 through 68 as if set forth fully herein, and realleges each paragraph by this reference.

78. Defendants, while acting under color of state law, have physically taken, seized and confiscated Plaintiff's property without constitutionally adequate process, thereby violating Plaintiff's constitutional procedural due process rights under the Fourteenth Amendment to the Constitution of the United States.

79. As a direct and proximate result of Defendants' taking, seizing and confiscating Plaintiff' property, without due process of law, Plaintiff has suffered and will continue to suffer irreparable harm and damages including the loss of their constitutional rights.

**COUNT IV:**
**DEFENDANTS, UNDER COLOR OF LAW, HAVE DEPRIVED PLAINTIFF OF PROPERTY IN VIOLATION OF ITS SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE CONSTITUION OF THE UNITED STATES**

80.  Plaintiff hereby incorporates paragraphs 1 through 68 as if set forth fully herein, and realleges each paragraph by this reference.

81.  Defendants' actions under color of state law, of physically taking, seizing and confiscating Plaintiff's property without prior notice or constitutionally adequate process, involves a gross abuse of power and fundamentally unfair procedures, thus violating Plaintiff's substantive due process constitutional rights under the Fourteenth Amendment to the Constitution of the United States.

**COUNT V:**
**DEFENDANTS, UNDER COLOR OF LAW, HAVE DEPRIVED PLAINTIFF OF PROPERTY THUS ENTITLING PLAINTIFFS TO INJUNCTIVE RELIEF**

82.  Plaintiff hereby incorporates paragraphs 1 through 68 as if set forth fully herein, and realleges each paragraph by this reference.

83.  Defendants, acting under color of state law or authority have deprived Plaintiff of their rights as protected under the Fifth and Fourteenth Amendments to the Constitution of the United States.

84.  Plaintiff wishes to reinstate Removed Access Controls and to protect the life and property of its members as

20

authorized under Commonwealth of Puerto Rico street access control legislation.

85. Plaintiff fears that any attempt to reinstate Removed Access Controls will result in further attempts by Defendants to interfere with Plaintiff' and its' members exercise and enjoyment of their rights in the future through threats, intimidation, coercion and confiscation of access controls.

86. Plaintiff has no adequate remedy at law to prevent Defendants from interfering with Plaintiff's and Plaintiff' members constitutional rights in the future.

87. Unless restrained and enjoined by this Court, Defendants will continue to interfere with Plaintiff' and its' members exercise and enjoyment of their constitutional rights in the future.

### COUNT VI:
### DEFENDANTS, UNDER COLOR OF LAW, HAVE DEPRIVED PLAINTIFF OF PROPERTY THUS ENTITLING PLAINTIFF TO DECLARATORY RELIEF

88. Plaintiff hereby incorporates paragraphs 1 through 68 as if set forth fully herein, and realleges each paragraph by this reference.

89. Defendants have engaged in actions and omissions under color of law hostile to rights protected under the Fifth and Fourteenth Amendments to the Constitution of the United States. A case of actual controversy is before this Court concerning the permitting, construction and installation access controls by

Plaintiff at the northern end of Carrión Court St. and Defendants' action of seizing, removing, taking and confiscating Removed Access Controls without compensation and without prior or subsequent hearing or the opportunity for hearing in violation of Plaintiff's and its members' constitutional rights.

90. Plaintiff request that this Court declare the rights and other legal relations between Plaintiff and Defendants and declare, furthermore, that Defendants actions and omissions are in violation of Plaintiff' and its members property and due process rights under the Constitution of the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. That this Court issue a permanent injunction, <u>first</u>, enjoining Defendants, and each of them, and their agents, employees, representatives, and all persons acting in concert, or participating with them, from continuing to engage in unconstitutional conduct that would result in Plaintiff's continuing being deprived of the use and enjoyment of their property consistent in Removed Access Controls and associated Permits; and, <u>second</u>, ordering the reinstallation of Removed Access Controls, in a condition similar or identical to that existing on August 16, 2007.

2.    For   a   Declaration   that   Defendants'   actions   have resulted   in   a   taking   of   Plaintiff's   property   without   just compensation   in   violation   of   Plaintiff's   rights   under   the Constitution of the United States.

3.    For   a   Declaration   that   Defendants'   actions   have resulted in violations to Plaintiff's procedural and substantive due process rights under the Constitution of the United States.

3.    For reasonable attorneys' fees, costs and expenses.

4.    For   compensatory,   exemplary   and   punitive   damages   in amount to be proven; and,

5.    For   such   further   relief   as   the   Court   may   deem   just, proper and equitable.

In San Juan, Puerto Rico this 19th day of March, 2009.


Respectfully submitted by,


/s/ Patricio Martínez-Lorenzo
USDC-PR NO. 120903
Martínez-Lorenzo Law Offices
Attorneys for Plaintiff
Union Plaza, Suite 1200
416 Ponce de León Ave.
Hato Rey, Puerto Rico 00918
Tel.: 787-756-5005
Fax:  787-641-5007
pmartlor@pmllawpr.com